FILED
2026 Feb-25  AM 11:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **JENNIFER ALONSO** | ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **7:25-cv-484-EGL** |
| **WALDROP & ASSOCIATES, P.C.,** | ) ) ) | |
| **Defendant.** | ) ) | |

## MEMORANDUM OPINION

On April 2, 2025, Jennifer Alonso sued Waldrop & Associates, P.C. Doc. 1. On August 19, 2025, Alonso filed an amended complaint. Doc. 12. Waldrop asks the Court to dismiss for lack of subject-matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 15. For the reasons explained below, the motion is **GRANTED.** Alonso's complaint is **DISMISSED WITH PREJUDICE.**

### BACKGROUND

Because Alonso is defending against a motion to dismiss, the Court accepts her well-pleaded factual allegations as true and construes them in the light most favorable to her. *Lanfear v. Home Depot, Inc*., 679 F.3d 1267, 1275 (11th Cir. 2012).

### A.    After Alonso obtains counsel, Waldrop sends her a debt collection letter.

"Jennifer Alonso's sorority excommunicated her in 2022." Doc. 12 ¶1. Alpha Phi terminated her membership and ordered her to vacate the sorority house. *Id.* ¶¶1-3, 14. And several months later, Fairway Capital began to send Alonso debt collection letters on behalf of Alpha Phi. *Id.* ¶15.

Alonso retained counsel and sent a letter to Fairway Capital to direct all future correspondence to the Civil Law Clinic at the University of Alabama School of Law. *Id.* ¶16. The debt was then apparently placed with Waldrop & Associates, P.C. *Id.* ¶¶3, 16.

On June 29, 2023, Waldrop mailed Alonso a letter concerning her debt. *Id.* ¶17. Alonso alleges that at the time of this letter, Waldrop knew she was represented by counsel. *Id.* Alonso's claim stems from the receipt of this letter. She received the letter on July 1, 2023, which caused her to "fear[] that she was no longer represented by legal counsel because as long as she was represented, debt collectors were supposed to communicate with her counsel regarding debts, not her." *Id.* ¶18. Because the Civil Law Clinic was closed for the weekend, she could not reach her counsel for several days. *Id.* During this time, "Alonso's fear that her counsel had abandoned her representation caused her significant anxiety, emotional distress, and mental anguish." *Id.*

On April 2, 2025, Alonso filed this action against Waldrop, alleging that it violated the Fair Debt Collection Practices Act ("FDCPA") when it mailed the June 29 letter because the Act generally bars debt collectors from communicating directly with consumers who they know to be represented by counsel. *See* 15 U.S.C. § 1692c(a)(2). This violation and the resulting emotional harm are the basis of her claim.

### B.     Alpha Phi sues Alonso in state court.

Alonso had previously tried to raise this claim in state court. In August 2023, Alpha Phi filed suit against Alonso in the Tuscaloosa District Court to collect unpaid membership dues. Doc. 12 ¶19; *see also Alonso v. Alpha Phi Int'l, Inc.*, No. CL-2024-0507, 2025 WL 649349, at *1 (Ala. Civ. App. Feb. 28, 2025). The matter was removed to the circuit court, and Alonso filed a third-party complaint against Waldrop, alleging the same FDCPA violation that she brings here. *See Alonso*, 2025 WL 649349, at *2-3 ("[Alonso's] third-party complaint against [Waldrop], alleged that Waldrop had, 'through its agents, violated the Fair Debt Collection Practices Act while trying to collect an alleged debt.'"); Doc. 12 ¶19. Alpha Phi moved to strike the third-party complaint, and on May 17, 2024, the circuit court entered a final judgment granting Alpha Phi's motion for summary judgment and striking the third-party complaint against Waldrop. *Alonso*, 2025 WL 649349, at *4. On June 26, 2024, Alonso filed a notice of appeal to the Alabama Court of Civil Appeals

arguing that the circuit court erred in granting summary judgment and in striking the claim against Waldrop. *Id.* at *4.

On February 28, 2025, the Court of Civil Appeals issued its decision, affirming the circuit court's dismissal of the claim against Waldrop. *Id.* at *8. The court held that the third-party claim was not properly brought pursuant to the Alabama Rules of Civil Procedure. *Id.* at *6. About a month later, Alonso filed this action. *See* Doc. 1.

### C.    The FDCPA generally bars debt collectors from communicating directly with consumers who are represented by counsel.

Congress passed the FDCPA to "eliminate abusive debt collection practices by debt collectors" because Congress found that these practices contribute to "personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). The Act "authorizes private civil actions against debt collectors who engage in certain prohibited practices." *Rotkiske v. Klemm*, 589 U.S. 8, 9 (2019). In an individual action like this one, "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of (1) any actual damage sustained by such person as a result of such failure;" and (2) "such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a)(1), (2)(A).

Alonso alleges a violation of § 1692c, which generally prohibits debt collectors from communicating with consumers who are represented by counsel:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt … if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer ….

15 U.S.C. § 1692c(a), (a)(2).

A consumer suing under the FDCPA must do so "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d).

## STANDARD

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To withstand a motion to dismiss under Rule 12(b)(6), a complaint "must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347-48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated another

way, the factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## ANALYSIS

Waldrop raises two arguments in support of its motion to dismiss: (1) that Alonso lacks standing, and (2) that her claim is barred by the statute of limitations. The Court agrees with Alonso that she has standing to pursue her claim, but agrees with Waldrop that she waited too long to bring it. Alonso argues that the Court should excuse her delay, but because no extraordinary circumstances justify that delay, she cannot benefit from equitable tolling.

## I.    Standing

Article III of the Constitution grants federal courts the authority to hear only "Cases" or "Controversies," which arise only when the plaintiff asserting a right has standing to do so. To have standing, the plaintiff must have suffered sufficiently concrete harm. The question presented here is whether a consumer who receives a single, unwanted letter in violation of the FDCPA's ban on communicating directly with the consumer instead of her lawyer has suffered a concrete injury sufficient to confer standing. The Eleventh Circuit recently considered a similar question in *Drazen v. Pinto*, which considered "whether … plaintiffs who received a single unwanted, illegal telemarketing text message suffered a concrete injury." 74 F.4th 1336, 1339 (11th Cir. 2023) (en banc). The en banc court unanimously concluded

6

that "the statutory harm" at issue was sufficiently concrete to confer standing because it "share[d] a 'close relationship' with a harm that has traditionally provided a basis for … a lawsuit for the common-law claim of intrusion upon seclusion." *Id.* I likewise conclude that the harm of receiving an unwanted letter, like an unwanted text, shares a close relationship with "the harm that underlies the common-law claim of intrusion upon seclusion," because "both harms reflect an intrusion into the peace and quiet in a realm that is private and personal." *Id.* Alonso, therefore, has alleged a concrete injury sufficient to confer standing.

**A.** Article III of the Constitution limits federal courts to deciding "Cases" or "Controversies." U.S. CONST. art. III, § 2. Absent the existence of a case or controversy, federal courts cannot exercise jurisdiction and must dismiss the claim. *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020). Standing is a key doctrine limiting the "role of the courts in a democratic society." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492-93 (2009) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

To establish standing at the pleadings stage, a plaintiff must allege facts to support three elements: injury in fact, causation, and redressability. *Id.* At issue here is whether Alonso has sufficiently alleged an injury in fact. To establish injury in fact, Alonso must show that she suffered a "concrete" injury—one that is "real, and not abstract." *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quoting

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). The Supreme Court has explained that "certain harms readily qualify as concrete," the most obvious being "traditional tangible harms, such as physical harms and monetary harms." *Id.* at 425. But while "tangible injuries are perhaps easier to recognize," the Supreme Court has "confirmed in many [] previous cases that intangible injuries can nevertheless be concrete." *Spokeo*, 578 U.S. at 340.

Alonso alleges that Waldrop violated the FDCPA, "but not every statutory wrong causes an injury capable of supporting standing." *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1242 (11th Cir. 2022) (en banc). While a "bare procedural violation" is not enough, it is clear that "some statutory violations could cause a real harm that supported standing." *Id.* at 1240-41. Alonso does not have standing simply because Congress authorizes a plaintiff to sue a debt collector for a violation of the FDCPA, but she can establish concrete harm if the statutory violation itself caused her either tangible or intangible harm that is sufficiently concrete.

Alonso argues that she has adequately alleged a tangible harm by alleging "stress, anxiety, mental anguish, and emotional distress" that followed from her receipt of Waldrop's letter. Doc. 18 at 3. The Eleventh Circuit "ha[s] not yet decided in a published opinion whether emotional distress alone is a sufficiently concrete injury for standing purposes." *Toste v. Beach Club at Fontainebleau Park Condo.*

*Ass'n, Inc.*, No. 21-14348, 2022 WL 4091738, at *4 (11th Cir. Sept. 7, 2022). The Court does not reach that issue in this case because Alonso has alleged an intangible harm that is sufficiently concrete.

To determine whether an intangible harm stemming from a statutory violation constitutes injury in fact, "both history and the judgment of Congress play important roles." *Spokeo*, 578 U.S. at 340. Congress is "well positioned to identify intangible harms that meet minimum Article III requirements," and it may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previous inadequate in law." *Id.* at 341 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578 (1992)). Then, "once Congress has identified an intangible harm, the question becomes whether that 'harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" *Drazen*, 74 F.4th at 1343 (quoting *Spokeo*, 578 U.S. at 341).

Section 1692c(a) identifies the intangible harm to consumers of receiving certain unwanted communications from debt collectors. The "debt collector may not communicate with a consumer in connection with the collection of any debt" in three contexts: (1) "at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer," (2) "at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication," or, relevant

here, (3) when "the debt collector knows the consumer is represented by an attorney with respect to such debt." 15 U.S.C. § 1692c(a). Thus, the FDCPA generally protects a consumer who has hired a lawyer to handle a debt collection issue from the intangible harm of hearing directly from the debt collector, and gives the consumer the right to sue for such a harm. *Id.* § 1692c(a)(2).

While Congress's judgment is "instructive and important," the Court must still determine whether that particular harm bears a "close relationship" to the "harm associated with" a common-law cause of action. *TransUnion*, 594 U.S. at 432. The concreteness requirement "centers on whether the harms share 'a close relationship,'" and importantly, does not require that the Court find that the harms are a "carbon cop[y]." *Drazen*, 74 F.4th at 1343 (quoting *Hunstein*, 48 F.4th at 1242). The question is whether the harms share a close relationship "in kind, not degree." *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.).

Numerous courts have "found that the harm caused by unwanted communications bears a close relationship to" the harm addressed by the common-law tort of "intrusion upon seclusion." *Six v. IQ Data Int'l, Inc.*, 129 F.4th 630, 634 (9th Cir. 2025) (collecting cases). In *Drazen*, the Eleventh Circuit found that a plaintiff had standing to sue under the Telephone Consumer Protection Act of 1991 ("TCPA") because the harm from receiving an unwanted text message from a telemarketer was similar in kind to the harm caused by an intrusion upon seclusion.

*Drazen*, 74 F.4th at 1345. The court explained that "[i]ntrusion upon seclusion consists of an (i) intentional intrusion (ii) into another's solitude or seclusion, (iii) which would be highly offensive to a reasonable person." *Id.* (citing *Restatement (Second) of Torts* § 652B (Am. L. Inst. 1965)). And though "a single unwanted text message may not 'be highly offensive to the ordinary reasonable man,' … an unwanted text message is nonetheless offensive to *some* degree to a reasonable person." *Id.* (quoting *Restatement (Second) of Torts*, *supra*, § 652B cmt. d.) (emphasis added).

It did not matter that one unwanted text message would not be enough to state a claim for intrusion upon seclusion. What mattered is that the harm Congress addressed was the same type of harm the tort addressed, even if different in degree. Thus, when the defendant "conceded … that receiving one unwanted text message each day for thirty days would be enough to satisfy the offensiveness element," that was "the whole ballgame." *Id.* "Drawing the line" between one or thirty was "a choice of degree," and "the Constitution empowers Congress to decide what degree of harm is enough so long as that harm is similar in kind to a traditional harm." *Id.*

The same logic applies here. The FDCPA, like the TCPA, was enacted to address "invasions of individual privacy." 15 U.S.C. § 1692(a). Congress "determine[ed] that both telemarketing and debt collection intrude on consumers' privacy." *Ward v. NPAS, Inc.*, 63 F.4th 576, 581 (6th Cir. 2023) (comparing 15

U.S.C. § 1692(a) with Pub. L. No. 102-243, § 2(5)). Thus, "even though they accomplish their goals through different means, both statutes protect privacy rights." *Id.*

And receiving an unwanted, illegal letter in violation of 1692c(a)(2) "resembles the *kind* of harm associated with intrusion upon seclusion," even if it does not necessarily rise to the "*degree* of offensive required" to state a claim for this tort at common law. *Drazen*, 74 F.4th at 1344. When a debt collector knowingly bypasses a consumer's attorney to send an unwanted communication directly to the consumer—here, by letter—the debt collector has intentionally intruded upon the consumer's solitude or seclusion. *See, e.g.*, *Ward*, 63 F.4th at 580-81 (holding that a single unwanted phone call in violation of the FDCPA was an intrusion into the solitude of another); *Gadelhak*, 950 F.3d at 462 ("The harm posed by unwanted text messages is analogous to [the intrusion upon seclusion] invasion of privacy."); *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1190-93 (10th Cir. 2021) (holding that a single unwanted phone call poses "an unwanted intrusion into a plaintiff's peace and quiet"); *IQ Data*, 129 F.4th at 634 ("[W]e see no meaningful difference in [the FDPCA] context between making a phone call and sending a letter.").[1] That harm is

---

[1] Defendants cite *Salcedo* to claim that the "Eleventh Circuit already recognizes the receipt of one letter does not constitute a sufficient intrusion upon an individual's privacy." Doc. 15 at 13. The court in *Salcedo* held that a single unwanted text message is not an invasion for intrusion upon seclusion. *See Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019). But *Drazen* explicitly abrogated *Salcedo* in holding that a single unwanted text message was an intrusion upon seclusion and therefore a concrete injury. *See Drazen*, 74 F.4th at 1343.

sufficiently concrete for purposes of standing. *See Hallford v. Portfolio Recovery Assocs., LLC*, No. 2:23-CV-1497, 2024 WL 6901341 (N.D. Ala. Feb. 21, 2024) (holding that in the context of an FDCPA violation, "the receipt of an unwanted communication—especially after the recipient has made her preferences known—is a concrete injury").

**B.** Two counterarguments merit a response. First, Waldrop notes that the Eleventh Circuit in *Trichell v. Midland Credit Management, Inc.* "held the common law 'furnishes no analog to the FDCPA claims' presented" in that case. Doc. 15 at 8 (quoting *Trichell*, 964 F.3d 990, 998 (11th Cir. 2020)). But *Trichell* was considering different provisions of the FDCPA that prohibit the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt" and "unfair or unconscionable means to collect or attempt to collect any debt." *Trichell*, 964 F.3d at 994 (quoting 15 U.S.C. §§ 1692e, 1692f). Those provisions prohibit certain *content* in debt-collection communications, unlike § 1692c, which generally prohibits *any* debt-collection communications. A plaintiff can state an intrusion-upon-seclusion claim even if none of the communications she receives are misleading, making that tort a good analogue for § 1692c. In contrast, "[t]he closest historical comparison" for the claims in *Trichell* was "to causes of action for fraudulent or negligent misrepresentation," and "these torts differ[ed] from the plaintiffs' claims in fundamental ways." *Id.* at 998. Most critically,

"misrepresentation torts" have long required "a showing of justifiable reliance and actual damages." *Id.* But the plaintiffs' bare statutory violations "jettison[ed] the bedrock elements of reliance and damages," and therefore bore "no relationship to harms traditionally remediable in American or English courts." *Id.*

Second, Waldrop and some courts have taken the position that receiving a letter is a harm different in kind from the harm addressed by intrusion upon seclusion, even accepting that a single phone call or text message does pass the common-law analogue test. The Seventh Circuit, for example, held that "text messages … differ in kind from … letters" because "they can disrupt a person anytime, anywhere, thereby invading private solitude" while "postal mail is delivered to a mailbox without interrupting the recipient's seclusion." *Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 641 (7th Cir. 2023). The majority recognized that "receiving a letter can be an irritation," but viewed "[t]he delivery of two letters to Pucillo's mailbox" as "too far afield from the traditional tort of intrusion upon seclusion to allege an actionable claim." *Id.* In the Seventh Circuit's view, a text passes the test, but a letter does not.

That approach cannot be squared with *Drazen*. Either communication, whether a text message or a letter, can be an unwelcomed "irritation," *id.*, and thus "offensive to some degree to a reasonable person," *Drazen*, 74 F.4th at 1345. And while the receipt of one or two letters (like the receipt of one or two texts or phone

calls) is unlikely to state a claim for intrusion upon seclusion, courts have considered the sending of letters as evidence of intrusions upon privacy and seclusion. For example, the court in *Desmond v. Phillips & Cohen Assocs., Ltd.*, allowed an invasion of privacy claim to go forward against a debt collector based on evidence of phone calls and "four letters" sent to the consumer. 724 F. Supp. 2d 562, 569 (W.D. Pa. 2010). Even if receiving the letters alone might not have stated a claim, receiving them was part of the intrusion harm that stated a claim. *See also Brown v. Transworld Sys. Inc.*, 646 F. Supp. 3d 1328, 1346-47 (W.D. Wash. 2022) (considering demand letters in holding that plaintiff stated a claim for invasion of privacy); *Rugg v. McCarty*, 476 P.2d 753, 754 (Colo. 1970) (holding that plaintiff stated a claim for invasion of privacy based on allegations that the defendant "harassed her with numerous telephone calls and letters demanding payment"). And even if an unwanted call or text is more irritating than an unwanted letter, receipt of any of the three can cause the same type of harm that is addressed by the common-law tort.

Moreover, there are practical reasons to question the *Pucillo* majority's distinction between mail that "can be picked up when, if, and how often the recipient chooses," and "a phone which is usually on one's person or close by throughout the day." 66 F.4th at 641. As Judge Lee's dissent in *Pucillo* notes, "it is a rather simple matter to silence, block, delete, or flat out ignore unwanted text messages" and "is

arguably more arduous to go to one's mailbox, open, read, and then discard postal mail." *Id.* at 645. And unlike text messages, "[f]or many purposes, … the government is entitled to assume that citizens will read mail sent to them and be aware of its contents." *United States v. Phillips*, 600 F.2d 535, 540 (5th Cir. 1979). For example, "service by mail being the rule in bankruptcy, creditors are obligated to pay attention to, and read, their mail, and … failure to do so has consequences." *In re Lavie Care Ctrs., LLC*, No. 24-55507- PMB, 2024 WL 4988600, at *15 (Bankr. N.D. Ga. Dec. 5, 2024) (footnote omitted). And multiple litigants have waived their rights to object to a magistrate judge's report because they neglected to check their mail with enough frequency. *See, e.g.*, *Roy v. Tennessee*, 487 F. App'x 281, 282 (6th Cir. 2012).

Thus, whether or not a debt collector sends an illegal text or illegal letter to a consumer who has hired a lawyer to deal with the debt, the communication inflicts a harm that is "similar in kind" to the traditional harm "underlying the tort of intrusion upon seclusion." *Drazen*, 74 F.4th at 1345. And because Alonso has pleaded such a harm, she has alleged a concrete injury sufficient to establish standing.

## II.   Statute of Limitations

While Alonso has standing to bring her claim, it still must be dismissed on statute of limitations grounds. *Gonsalvez v. Celebrity Cruises Inc.*, 750 F.3d 1195,

1197 (11th Cir. 2013) ("[D]ismissal on statute of limitations grounds is appropriate if it is apparent from the face of the complaint that the claim is time-barred.") (citation modified). There is no question that her complaint was filed after the statute of limitations ran. The only remaining issue, therefore, is whether Alonso can benefit from equitable tolling. As explained below, she cannot.

Alonso alleges that Waldrop violated the FDCPA when it mailed her a debt-collection letter. Doc. 12 ¶¶18, 25-27. The FDCPA provides the relevant limitations period: "An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court . . . or in any other court of competent jurisdiction, within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Waldrop mailed the letter on June 29, 2023. So, unless tolled, the period of limitations for Alonso's claim expired in June 2024.[2] Alonso does not contend that her suit was timely, but instead urges this Court to toll the relevant statute of limitations to allow her case to proceed. Doc. 18 at 10-16.

Equitable tolling is an extraordinary remedy that should be extended only sparingly. *Wright v. Waste Pro USA, Inc.*, 69 F.4th 1332, 1340 (11th Cir. 2023). The plaintiff bears the burden of proving "(1) that [she] has been pursuing her rights

---

[2] When the FDCPA violation is a communication by a letter, the one-year limitations period begins to run when the letter is mailed. *See Maloy v. Phillips*, 64 F.3d 607, 608 (11th Cir. 1995). To compute the statute of limitations, courts "exclude the mailing date as the triggering date," and compute the limitations period beginning the day after. *Id.*

diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing." *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016) (en banc) (citation modified). For the reasons given below, Alonso fails to plead extraordinary circumstances beyond her control and therefore is not entitled to equitable tolling. Her claim is time-barred.

Alonso argues that she (1) diligently pursued her rights by attempting to litigate her claims against Waldrop in state court; and (2) that "the time taken by the Court of Civil Appeals" was an "extraordinary intervening circumstance," entitling her to equitable tolling. Doc. 18 at 13. While Alonso may sufficiently allege facts to show diligent pursuit, "both [elements] are required for equitable tolling," and she fails to plead extraordinary circumstances sufficient to support equitable tolling. *See Villarreal*, 839 F.3d at 971.

The "extraordinary circumstances" prong "is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Menominee Indian Tribe v. United States*, 577 U.S. 250, 257 (2016). Alonso urges this Court to find "extraordinary intervening circumstances" based on "the necessity to refile the claim in a different forum to maintain jurisdiction" and "the time taken by the Court of Civil Appeals to render an opinion." Doc. 18 at 13. She claims she was faced with circumstances "beyond her control" because "to have

filed her claim independently either as a separate action in state court or in this Court would have been outright unethical forum shopping." *Id.*

But Alonso's situation is not the sort that would cause the Court to extend a "rare" and "extraordinary" remedy. Alonso's framing of her circumstances misses a critical moment in the timeline. Three days before the statute of limitations ran,[3] Alonso chose to appeal the dismissal of her third-party complaint rather than to file a separate claim against Waldrop.

When the circuit court dismissed the complaint against Waldrop on May 17, 2024, Alonso could have, within the one-year limitations period, filed a claim against Waldrop in federal or state court, and faced no repercussions. Alonso attempted to join Waldrop to the state court action via Alabama Rule of Civil Procedure 13(h) and 14(a). *See Alonso*, 2025 WL 649349 at *6-7. Importantly, these rules govern the *permissive* joinder of parties and claims. Even if she believed, as she claims, that her FDCPA claim arose from the same nucleus of facts as the state-court complaint her sorority had brought against her, she was not required to bring that claim in the same action. Regardless of whether Alonso understood this, the Eleventh Circuit "has defined 'extraordinary circumstances' narrowly, and ignorance of the law does not, on its own, satisfy the constricted 'extraordinary

---

[3] The statute of limitations ran on Alonso's claim on June 29, 2024. The Alabama Court of Civil Appeals noted that it wasn't clear on what date Alonso's appeal was filed, but it was either June 24, 2024, or June 25, 2024, or June 26, 2024. *Alonso*, 2025 WL 649349, *4 n.1.

circumstances' test." *Jackson v. Astrue*, 506 F.3d 1349, 1356 (11th Cir. 2007); *Wakefield v. R.R. Ret. Bd.*, 131 F.3d 967, 970 (11th Cir. 1997) ("Ignorance of the law usually is not a factor that can warrant equitable tolling."); *Chavers v. Comm'r, Soc. Sec. Admin.*, No. 23-12097, 2024 WL 3042535, at *2 (11th Cir. June 18, 2024) ("Reliance on mistaken advice from counsel and ignorance of the law do not constitute extraordinary circumstances.").

Alonso's argument that she would have been subject to discipline for unethical forum shopping holds no weight. She was not required to file against Waldrop in the same action and thus was not required to appeal the dismissal of her third-party complaint. Her decision to appeal the circuit court's decision, days before the end of the limitations period, is fatal to her argument that she faced extraordinary circumstances beyond her control. Alonso claims that she made a "carefully thought out, reasonable, and prudent decision based on a matter of judicial efficiency." Doc. 18 at 12. But a carefully-thought-out litigation plan does not warrant the extraordinary remedy of equitable tolling. *Howard v. United States*, No. 3:03-CV-76, 2005 WL 8145872, at *2 (M.D. Ga., Mar. 18, 2005) ("The tactical decision to wait to file a § 2255 while pursuing other avenues of litigation is not a fact that is 'extraordinary' for equitable tolling purposes."); *Mesidor v. Waste Mgmt., Inc. of Fla.*, 606 Fed. App'x 934, 936 (11th Cir. 2015) (holding that the choice to appeal a

severance order when the precedent is clear that it was not appealable is not an "extraordinary circumstance entitling the Appellants to equitable tolling").

Alonso frames her situation as impossible and extraordinary because the statute of limitations ran as she was waiting on a decision from the Court of Civil Appeals. But this is not the situation or timeline with which the Court is concerned. Alonso's decision to appeal in the first place is not an extraordinary circumstance warranting equitable tolling. She knew, or should have known, that once she appealed, the timeline of her claim was beyond her control; and further, she made the decision to appeal just days before the limitations period would run.[4] While Alonso cannot control the deliberations of a judicial body, she had complete control over the tactical decision to appeal. Given that Alonso's choice to appeal the dismissal of a third-party complaint was neither extraordinary nor beyond her control, it does not provide a basis for equitable tolling.

Even if the Court accepted Alonso's framing of her circumstances, that a litigation delay or fear of sanctions constitutes extraordinary circumstances, she still fails to establish this element of equitable tolling. In general, a litigation delay will not amount to an extraordinary circumstance. *Hornady v. Outokumpu Stainless USA*,

---

[4] Even if Alonso was unaware that the limitations period was about to run, this is not an extraordinary circumstance that warrants equitable tolling. *Wallace v. United States*, 981 F. Supp. 2d 1160, 1164 (N.D. Ala. 2013) ("Neither miscalculation of the limitations period, nor ignorance of the law, constitutes an extraordinary circumstance that would justify equitable tolling of the statute of limitations.").

No. 1:18-00317, 2021 WL 6211021, at *6 (S.D. Ala. Feb. 3, 2021) ("[C]ases in this Circuit do not generally find litigation delays to merit an 'extraordinary' circumstance that could warrant application of the doctrine to equitable tolling."). Further, she does not allege any basis for her claim that she would have faced sanctions and discipline. She cites no legal support for her claim that she would have engaged in "outright unethical forum shopping." Doc. 18 at 13. To the contrary, it is not unheard of, much less is it unethical, to protect against a lapse in the statute of limitations by filing a claim in both state and federal court and asking one court "to hold the suit filed there in abeyance pending disposition" of the other. *Artis v. D.C.*, 583 U.S. 71, 91 (2018); *cf. Walker v. Martin*, 562 U.S. 307, 313-14 (2011) ("Finding that Martin's federal petition included ineffective-assistance-of-counsel claims he had not aired in state court, the District Court stayed the federal proceedings pending Martin's return to state court to exhaust his remedies there.").

Thus, Alonso has not met her burden to "prove that equitable tolling is appropriate because of extraordinary circumstances that were both beyond her control and unavoidable even with diligence." *Wright*, 69 F.4th at 1340 (citation modified). The circumstances that allegedly caused Alonso's delay—her decision to appeal the circuit court's ruling—were neither extraordinary nor beyond her control. Her claim is therefore time-barred and must be dismissed.

## CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss (Doc. 15) is due to be granted. Alonso's complaint (Doc. 12) is **DISMISSED WITH PREJUDICE** as it is time-barred by the applicable statute of limitations.

**DONE** and **ORDERED** this 25th day of February, 2026.

**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE